United States District Court
Southern District of Indiana



Mark A. White

v.

United States of America

Case No. IP 98-CR-03 M/F

### Motion for A Certificate of Appealability Pursuant to Rule of Appellate Procedure 22(b)1 and 28 U.S.C. 2253(c)(1) and (c)(2).

**NOW COMES** Mark A. White and respectfully moves this Honorable Court for a Certificate of Appealability.  The COA Statue permits the issuance of a COA 28 U.S.C. 2253(c)(1) only where a Petitioner has made "A substantial showing of a denial of a constitutional right 28 U.S.C. 2253(c)(2)."  The Petitioner must show that a reasonable jurist could debate whether, or for that matter, agree that the Petition should have been resolved in a different manner or the issue presented are adequate enough to deserve encouragement to proceed further.  Slack v. McDaniel 529 U.S. 473, 484 120 S.Ct 1595 146 Ed 2d 542. (2000) Barefoot v. Estelle, 463 U.S. 880. 893 N.4. 103 S.Ct 3383, 77 L.Ed 2d 1090 (1983).

## Issue for COA Certification

1. Whether Post Conviction Counsel was ineffective on White's
   initial review of Collateral Proceedings for miscalculating the
   original 28 U.S.C. 2255 filing date.

---

2. Whether White has made a substantial showing of his fifth amend-
   ment right to due process being denied in light of IN RE Winship
   397. U.S. 358, 364 25 L.Ed 2d 368 90 S.Ct 1068 (1970)?

---

3. Whether the District Judge knew that, the removal of the
   assessment of facts from the jury violated the Petitioner's
   right to due process and the sixth amendment guarantees to a
   fair sentencing under Winship and Gaudin?

---

4. Since the constitutionality of Judge found facts are unconstitu-
   tional now, then they were unconstitutional when the sentencing
   Judge applied his finding of facts to Petitioner's sentencing
   all in clear violation of the sixth amendment Jurisprudence.

---

**"Footnote":** I Mark White am aware that this court likes to consider
motion in this court as 28 U.S.C. 2255, regardless of the caption
or heading...I would like to address and clearify that.  This is
not a 2255 or a successive 2255 Petition, but rather a 28 U.S.C.
2253(c)(2) showing a denial of a substantial constitutional right
being violated.

## Discussion of Issues

In light of the recent Seventh Circuit decision in Joseph Lombardo
v. United States 15-2860, and the U.S. Supreme Court decision in
Trevino v. Thaler, 133 S.Ct 1911, (2013) and Martinez v. Ryan 132
S.Ct 1309 (2012) Ramirez v. United States, 799 F.3d 845, 852-54
(7th Cir. 2015), is whether a petitioner has cause to excuse a
procedural default under equitable tolling because of Ineffective
Assistance of Counsel on a initial-review of collateral proceeding.

In May of 2007, Petitioner White's family retained Dana Chilress-
Jones to prepare and file a section 28 U.S.C. 2255 Motion.   There
were approximately six (6) months remaining on the one year limita-
tion period under the AEDPA.  Following the retainment of Attorney
Jones, White wrote directly to Mrs. Jones and advised her that the
petition for Writ of Certiorari was denied by the United States
Supreme Court on November 6, 2006 and expressed a belief that he
(White) had one year from that date to file a timely motion under
28 U.S.C. 2255, to vacate, set aside, or correct date for com-
mencing the one-year limitation period under the AEPDA.   White
advised Attorney Jones to verify the correct date through an inde-
pendent investigation...see Exhibit A, White followed the letter
identified in paragraph 2 herein with at least two additional
letters inquiring about the process on the Section 2255 Motion
and again expressed the belief that November 6, 2007 was the dead-
line date for filing a timely 2255 motion.   Nevertheless, because
the Petition for rehearing was denied on January 8, 2007, White
again expressed **uncertainty** about which date controlled and direct-
ed Attorney Jones to verify the correct date.

On December 27, 2007, after the deadline under the AEDPA had ex-
pired, White received a letter from Attorney Jones informing him
that, contrary to White's strong assertion that Attorney Jones
not contact the Attorney who represented him on direct appeal
(Attorney William H. Dazey Jr.), she finally contacted him to find

out procedural history of White's, and specifically to confirm that
reconsideration of the Petition for Writ of Certiorari had been
denied on January 8, 2007...see Exhibit D. Attorney Jones also
explains that she will be coming to visit White at the Federal
Correctional Institution - Terre Haute Indiana 47808, either
Saturday, January 4, 2008 or the next Sunday, January 5, 2008 to
go over the 2255 Petition, so that the same can be filed on Monday,
January 6, 2008.

On January 8, 2008, Attorney Jones filed White's Motion Pursuant to
28 U.S.C. 2255 in the above caption case and numbers within the
United States District Court, Southern District of Indiana. January
8, 2008, is the one year anniversary date the United States Supreme
Court denied the Petition for rehearing the denial of Certiorari
(see docket sheet - 1·8·09) Section 2255 Motion.

Having the duty to know what the law requires, Attorney Jones either
knew, or should have known, that the one-year limitation period
under the AEDPA began to run when the Supreme Court denied the Peti-
tion for the Writ of Certiorari on November 6, 2006, and not the
subsequent date that the Petition for rehearing was denied.

Attorney Jones never provided White with a copy of the government's
response to the Section 2255 Motion, and the only reason White
became aware of the basis upon which the United States opposed the
Section 2255 Motion was because that basis appeared on the first
page of the Court's Order denying the Section 2255 Motion.

White filed a motion to remove Attorney Jones as Counsel of record
because she had deliberately defrauded him by filing the motion
under 28 U.S.C. 2255 beyond the one-year limitation period. After
knowing, or having reason to know, that the Petition for Writ of
Certiorari was denied on November 6, 2006, and that November 6,
2006, was the correct date for calculating the one-year limitation
period under the AEDPA. Attorney Jones made the false representa-
tion of material fact, with knowlege of its falsity and with in-
tent to deceive White into believing that the one-year limitation
period could be calculated from the denial of Petition for rehear-
ing the denial of Certiorari on January 8, 2007. Had it not been

for the Ineffective Assistance of Counsel on White's initial 28
U.S.C. 2255 Post Conviction Proceedings  a just Court would have
been able to determine the constitutionality of White's conviction.
White is entitled to equitable tolling because of the Ineffective
Assistance of Counsel in his initial review collateral proceedings,
see Trevino v. Thaler, 133 S.Ct 1911 (2013) Martinez v. Ryan 132
S.Ct 1309 (2012), Ramirez v. United States, 799 F.3d 845, 852-54
(7th Cir. 2015), and Joseph Lombardo v. United States, case number
15-2860.  In recent cases from the United States Supreme Court has
stated that, the landscape has changed regarding the effect or
negligent counsel during initial-review collateral proceedings.  A
Certificate of Appealibility is a showing of a denial of a substan-
tial constitutional right.  Petitoner White seeked professional
legal counsel to represent and present his constitutional claim to
the court since he is ill equipped to represent himself.  Since the
collateral proceedings is the equivalent of a prisoner's Direct
Appeal as a claim of Ineffective Assistance of Counsel. White has
been denied fair process and the opportunity to comply with the
Federal Procedures and obtain an adjudication on the merits of his
claim.  Without the adequate representation of Effective Assistance
of Counsel during his initial review of his 2255  collateral pro-
ceedings.  White asserts that Attorney Jones inadequate assistance
of counsel at his initial review for his 28 U.S.C. 2255 collateral
proceedings establishes cause to excuse the procedural default.
The doctrine barring procedurally defaulted claims from being heard
is not without exceptions.  A prisoner may obtain Federal review
of a defaulted claim by showing cause for the default and preju-
dice from a violation of Federal law. In Coleman v. Thompson 501
U.S. 722, 753-754 111 S.Ct 2546 115 L.Ed 2d 640 (1991) However, did
not present the occasion to apply this principle to determine
whether Attorney's errors in initial-review of collateral proceed-
ing may qualify as cause for a procedural default.  So for White to
present a claim of Ineffective Assistance of Counsel in accordance
with Federal procedures, then it is more likely that White needed
an effective attorney assistance, which Attorney Dana Childress-
Jones did not provide in White's initial review of his

U.S.C. 2255 collateral proceedings...since a persons inability to
present a claim of trial error is of particular concern when the
claim is one of ineffective assistance of counsel.

The right to effective assistance of counsel at trial is a bedrock
principle in our justice system.   However, White asserts that the
ineffectiveness of his post conviction attorney is cause as a
ground for relief under Holland v. Florida 560 U.S. 130 S.Ct 2549,
177 L.Ed 2d 130 (2010).   In the words of justice Frankfurter,
"Equity eschews mechanical rules; it depends on flexibility."
Holmberg v. Armbrecht, 327 U.S. 352, 396, 66 S.Ct, 582, 584, 90
L.Ed 743 (1946).   Every Circuit Court of Appeals that has consi-
dered the subject has taken the position that serious attorney mis-
conduct may constitute an extraordinary circumstance for purpose
of equitable tolling...see United States v. Martain 408 F.3d 1089,
1093 (8th Cir. 2005) (stating that "serious attorney misconduct as
opposed to mere negligence, may warrant equitable tolling") accord,
Fleming v. Evans 481 F.3d 1249 (10th Cir. 2007) Baldayaque, 338
F.3d at 145; Spitsyn v. Moore 345 F.3d 796 (9th Cir. 2003) United
States v. Wynn, 292 F. 3d 266 (5th Cir. 2002) Nara v. Frank 264
F.3d 325 (4th Cir. 2000) and Downs v. McNeil 520 F.3d 1311 (11th
Cir. 2008) (Rejecting the 7th Circuit bright line rule).   and so
has the Seventh Circuit in Joseph Lombardo v. United States
15-2860, on April 25, 2016.

Together these Circuits have declined to impute attorney's mis-
conduct to a client where the attorney has made misrepresentation
to the client, disregard the client's instructions, refused to
return documents, or abandoned the clients case.   In Baldayague,
for example, the Petitioner's attorney ignored a directive to file
a petition under 28 U.S.C. 2255 failed to conduct any legal re-
search and wrongly advise the Petitioner's.   However, White re-
peatedly expressed his uncertainty about which date controlled
the commencement of the one-year limitation period under the
AEDPA (see Exhibit A,B,C,) and repeatedly asked Attorney Jones to
determine the correct date for commencing the one-year limitation
period under the AEDPA.   As such White believed that the motion as
beyond the one-year limitation period set forth int the AEDPA.

White has exercised due diligence in investigating the fraud and
bringing it to the courts attention...see Robinson v. Johnson,
313 F.3d 128, 142 (3d Cir. 2002) (explaining that a Petitioner must
"exercise reasonable diligence in investigating and bringing the
claim").  The record of the instant shows that once White became
aware of Attorney Jones being ineffective and responsible for the
untimely filing of his initial review of 28 U.S.C. 2255 collateral
proceedings he embarked upon a course to bring the misconduct to
the attention of the court...see Exhibit E C.O.A. filed May 8,
2009, at 4:23(P.M.) and requesting "Equitable Tolling" of the limi-
tation period.  Moreover, White has been very diligent in his
efforts to have the claims raised in his Section 2255 Motion re-
solved on the merits and has presented equitable reasons for doing
so.  A COA may issue only for a claim for which White has made a
substantial showing of a constitutional right.  This means
according to Miller-El v. Cocker 11, 537 U.S. 332 (2003) that
"Reasonable Jurists could debate whether (or for that matter, agree
that) the petition should have been resolved in a different manner
or that the issue presented were adequate to deserve encourage-
ment to proceed further."  Id. 366 "Quoting Slack v. McDaniel 529
U.S. 473 (2000) Dalton v. Battaglia, 402 F.3d 729, 738 (7th Cir.
2005) Because White is requesting an evidentiary hearing on the
ineffective assistance of counsel claim and fraudulent conduct of
attorney Jones to determine whether it constitutes exceptional
circumstances to equitable tolling of his initial review of Id
28 U.S.C. 2255 collateral proceedings.  However, in 1970, the
United States Supreme Court ruled in the case of Samuel Winship
397 U.S. 358, 364 25 L.Ed 2d 368 90 S.Ct 1068 (1970).  As a
general rule each element of a charged crime must be set forth in
an indictment...see Hamling v. United States 418 U.S. 87 117, 41
L.Ed 2d 590 94 S.Ct 2887 (1974), and in Winship

-7-

397 U.S. 358. Every element of the crime must be determined by
the jury, assuming the jury right was invoked...seeSullivan v.
Louisiana 508 U.S 275 277-278, 124 L.Ed 2d 182 113 S.Ct 2c78
(1993).

In 1999 Petitioner White exercised his right to trial by jury 29
years after the issuance of Winship. The jury in White's case
found him guilty of drug conspiracy. As in instruction NO 16 of
the jury instruction...see exhibit F. Reads each defendant is
charged in count 1 of the indictment, with conspiracy to possess
with the intent to distribute and to distribute cocaine in viola-
tion of title 21 U.S.C. Section 841 (A)(1) and 846. As required
by law the relationship between crime and punishment was clear.
The penalty which the defendant was exposed should have been in
the indictment. In Petitioner White's case, the defendant had no
penalty phase in his indictment, leaving the jury with instruction
52...see exhibit G. The evidence received in this case need not
prove the actual percentage or purity of cocaine that was part of
the alleged transaction by the defendant. The government must
prove beyond a reasonable doubt, however, that a measurable amount
of the controlled substance was, in fact cocaine. "The word
measurable means what can be measured." **Implanting the thought
of a small amount.** However, in the other two charges in which
the defendant was facing, a penalty was described in the jury
instruction and the indictment like 18 U.S.C. 1956 (A)(1)(A) and
(h) and 18 U.S.C. 1512(A)(1)(c) 1513(A)(1)(b). The government
deliberately left out the penalty phase in the indictment, because
the government knew that **the Judge was going to remove from the
jury the assessment of facts concerning elements of the offense
required by law to be proved to the jury.** The sixth amendment
provides for a trial by jury as a double security against pre-
judice of a Judge who may partake of the wishes and opinions of
the government. **The Judge cannot soundly or morally state under
oath** that he did not know the penalty phase was not in the in-
dictment, **nor can the Judge morally or ethically state under oath
that his assessment of the facts did not violate the petitioner's**

**fifth amendment right to due process under Winship.** "The District Court violated the cardinal principle that the jury is to determine assessment of facts."

The Judge in Petitioner White's case, when his assessment of facts was unconstitutional and the sentence imposed was unconstitutional and since it was unconstitutional it is as inoperative as if it had never been passed...see Chicago J and L.R. Co v. Hackett 228 U.S. 559, 566, 57 L.Ed 966 33 S.Ct 581 (1993) because a law repugnant to the constitution "is void" and is as no law. "ExParte **Siebold**, 100 U.S. 371, 376, 25 LEd 717 (1880). In fact what a court does with, regards to an unconstitutional law is simply ignore it. It decides the case "disregarding the [unconstitutional] law"...see Marbury v. Madison, 1 Crunch 137, 178, 2. L.Ed 60 (1803) The habeas corpus statue permits a federal court to entertain a petition from a federal prisoner through 28 U.S.C. 2253(c)(2) only on the ground of a denial of a substantial constitutional violation and that, a jurist of reason would debate a different outcome. In Petitioner's White's case the jury foreman Joel Greenburg stated in exhibit H, that the deceased person told him. Agent Neukam's testimony was used with the intention of establishing the drug amounts that he testified to. In order to satisfy the measurable amount requirements in the jury instruction and verdict.

The jury didn't rely upon the witnesses testimony which was deemed to be inconsistent to the point of being unreliable but instead relied upon agent Neukam's testimony...testimony which lead to jury foreman Joel Greenberg's statement to the Indianapolis Star News, staff writer Susan Schramm about the jury being spoken to from the grave by a deceased man. The testimony was so compelling the District Judge stated on the record, you have heard the testimony of the deceased person...see exhibit I, also the District Court states on the record, when Attorney Bill Dazey states, can I now disclose that I just dreamed up that declaration of deceased declarant?

"The District Court states, we all know you did, we all know you

did, "but that jury listened to those statements and they listened
to us treat 'him' (meaning the deceased person) as if he had been
there." So the jury's foremans truthfulness about the deceased
person speaking from the grave, was the same voice and assessment
of thought and intent the court, the attorney's, and prosecutor
heard when agent Neukam testified to these statements, "which the
Judge said were not being introduced as statements, but were
statements...see exhibit J, Page 5669. "Quoting the Court, As I
said in my written entry, under the cases that I cited that those
**statements** that he made to the police officer are admissible. Now
**I just said statements**, and I said they weren't **statements** and it
sounds as if **I mean statements under** the rule."

These statements by the District Court and Jury Foreman contests
and leaves no doubt in the juries verdict of guilt. Not the
Seventh Circuit theory of assumption of what any reasonable jury
would have done. Because we know what the jury actually did
according to the jury froeman Joel Greenberg's statements to staff
writer Susan Schramm of the Indianapolis Star News. "This infor-
mation helped corroborate other testimony about the drug organi-
ation said a veteran juror, who has served on three juries...see
exhibit H, in Francis v. Franklin 471 U.S. 307, 324 N. 9. 85 L.Ed
2d 344, 105 S.ct 1965 (1985). We presume that jurors, conscious
of the gravity of their task, attend closely to the particular
language of the trial court's instruction in a criminal case.
Richardson v. Marsh 481 U.S. 200, 206, 95 L.Ed 2d 176, 107 S.ct
1702 1987, and Yates v. Evall, 500 U.S. 391 403 114 LEd 2d 432, 111
S.Ct 1884 (1991). However, the Seventh Circuit assumption that
Willis' statements had no impact on the jury's findings and verdict
are in great doubt according to Joel Greenberg and the District
Court treating the deceased person like he was right there in the
courtroom. An evidentiary hearing needs to be held to determine,
whether a jurist of reason could debate or agree that the petition
should have been resolved in a different manner. In Penry v.
Lynaugh 492 U.S. 302, 330, it follows that, a court has no
authority to leave in place a conviction or sentence that violates

a substantial rule, regardless of whether the conviction or sentence became final before the rule was announced. Under 21 U.S.C. 841(b)(1)(c), the Petitioner's maximum is 20 years. Since no drug amount or penalty phase was in the Petitioner's indictment in jury instruction 63 Exhibit K, the District Court stated in the instruction that, I instruct you that the matter of the penalty to be imposed or the disposition to be made of this case if a verdict of guilty is reached is not before you, the jury, but that this is a matter for the court to determine or fix...Jury instruction No. 63 see Exhibit K.

After reading Exhibit K, there can be no question that, the judges failure to abide by the constitution results in violation of the cardinal principle of the constitution. When the court removed the assessment of fact finding from the jury to determine the penalty phase of the Petitioner's. In United States v. Olano 507, U.S. 725, 123, L.Ed 2d 508, 113 S.Ct 1770 (1993). A deviation from a legal rule, during the District Courts proceedings is an error unless the defendant has waived the rule. However, if the defendant did not waive the rule, then there has been an "error" within the meaning of the Rule 52(b) despite the absence of a timely objection. This error affected the substantial rights and prejudiced the Petitioner and the outcome of the District Court proceedings. The District Court violated the cardinal principle that the jury is to determine assessment of fact finding.

In 1986, the United States Supreme Court deviated from the framers of the constitution intent and the guarantees of the constitution through the wrongly decided decision of McMillan v. Pennsylvania 477 U.S. 79, 91. L.Ed 2d 67, 106. S.Ct 2411 (1986) which was held that, a defendant's due process rights were not violated, when a sentencing Judge decided facts that raised the defendant's maximum and minimum sentence using the proponderance of the evidence standard. The U.S. Supreme Court has resolved the tention between the Circuits. However, in 2000, when the United States Supreme Court ruled in Apprendi v. New Jersey 530 U.S. 466, 483, N. 10, 490 120 S.Ct 2348 147 L.Ed 2d 435, (2000). Any fact that increases the pena

penalty to which a defendant is exposed constitute an element of a
crime and must be found by the jury not the Judge see Cunningham
v. California 549 U.S. 270, 281, 127, S.Ct 856, 166 L.Ed 2d 856
(2007). The Supreme Court has held that, a substantial unreasona-
ble penalty is **illegal** and must be set aside. It unaviodably
follows that any fact necessary to prevent a sentence from being
substantively unreasonable and thereby exposing the defendant to
the longer sentence is an element that must be either admitted by
the defendant or found by the jury. It may not be found by a Judge.
In 2000 Petitioner White was on direct review and the Seventh Cir-
cuit limited Apprendi's reach by standing firm to the Circuit law,
that drug quantity is not an element of the offense and denied
White the constitution guarantee's of the 5th and 6th amendment
under Winship and Apprendi by assuming what any reasonable jury
would have done. In Byorkman 270 F.3d 49h and United States v.
Smith 308 F.3d 726, "If drug amount was a true element of 841, then
a failure by a jury to agree on the drug amount would mean that,
there is no offense at all." Apprendi does not rewrite or change
the elements of any federal offense. However the appellate court
and District Court are assumed to have known that, the reasonable
doubt standard of proof applied under Winship. Since Winship
expressly held that the reasonable - doubt standard is a prime
instrument for reducing the risk of convictions resting on factual
errors. The standard provides concrete substance for the presump-
tion of innocence that, bedrock "Axiomatic and elementary" principle
whose "enforcement lies at the foundation of the administration of
our criminal law." Due Process commands that, no man shall lose his
liberty unless the government has borne the burden of convincing
the fact finder of his guilt. To this end. the reasonable doubt
standard is indispensable for it "impressess" on the trier of fact,
the necessity of reaching a subjective state of certitude of the
facts in issue 397 U.S. at 363-364, 25, 368, 90 S.Ct 1068, 51. In
United States v. Olano 507 U.S. 725 (1993) the government conceded
and the U.S. Supreme Court accepted that the District Court's inter-
pretation of federal rule of criminal procedure 24(c) was plainly

erroneous.  The error itself is that, the Judge should have known the law, where
Circuit law is clearly contradicted by the later Supreme Court opinion, like in
Appendi, when the Supreme Court opinion applied the correct standard of proof beyond
all reasonable doubt.  The District Court should have known at that point, that his
removal of the assessment of facts from the jury violated the Petitioner's 5th and
6th amendment right.  The Petitioner has been prejudiced by the illegal sentence,
which constitutes a clear miscarriage of justice and each day the Petitioner suffers
in prison is an act of cruel and unsual punishment.  The government and Court of
Appeals might say that, the Petitioner should have objected to the drug amount at sen-
tencing, which the defendant did object to the P.S.I. Report and guideline calcula-
tion, but to no avail.  The objections were overruled, because it was the Judge who
determined the drug amount, and appealing these objections in the Seventh Circuit
was a frivolous thing to do.  So it's quite hard to determine, whether Counsel's
failure to object on appeal was the norm or that Counsel's silence was due to his
incompetence of the law.  But in any event, the Judge should have known the law.
Since the Judge is the referee of the Court and a evidentiary hearing should be or-
dered to determine if the Petitioner's claim should go any further.

Ineffective Assistance of Trial Counsel for failing to object to the
District sentencing enhancement based upon drug quantity that was not
submitted to the jury, in violation of Apprendi v. New Jersey 530
U.S. 466 (2000) and thereby subjected the error to heavier burden
for White to meet on Direct Appeal.  During the trial, the jury was
not instructed to determine the amount of drugs involved in the
conspiacry, as such, **the jury verdict did** not **authorize** the
District Court to impose a sentence beyond the default statutory
maximum of 20 years found in 21 U.S.C. 841(b)(1)(c), for an unspe-
cified quantity of cocaine powder.  This is so because under the
Seventh Circuit decision in **U.S. v. Knight** 342 F.3d 697, (7th Cir.
2003) Before a District Court is **authorized** to impose a sentence beyond 20 years
set forth in 841(b)(1)(c) the jury must first return a special verdict finding of
a specified type and quantity of drugs that is sufficient to trigger a statutory
maximum above that found in 841(b)(1)(c) for a cocaine conspiracy.

## Conclusion

For the foregoing reason, Petitioner White contends that Attorney Dana Childress-Jones, perpetrated a fraud and committed an egregious act of ineffective assistance of counsel in White's initial 28 U.S.C. 2255 collateral review proceedings, which directly effected the timelines and outcome of his Section 2255 Motion being filed in the District Court.

In the United States of America, the right to effective assistance of counsel is a bedrock principle of our justice system. The Supreme Court has stated in **Martinez v. Ryan** 566 U.S. 132 S.Ct 1309 182 L.Ed 2d 272, 2012 U.S. (2012), that a prisoner may establish cause to excuse a procedural default are elaborated in the exercise of a courts discretion. These rules reflect an equitable judgment that only where a prisoner is impeded, may a Federal Habeas Court excuse the prisoner from the usual sanction of default by allowing a Federal Habeas Court to hear a claim of ineffective assistance of trial counsel, when an attorneys error caused a procedural default in the initial collateral review proceedings, acknowledged as equitable matter, that the initial-review collateral proceeding. If undertaken without counsel's ineffective assistance. The Petitioner's 28 U.S.C. 2255 would have been given the proper consideration for which White's substantial constitutional claims were presented. White's Post-conviction Attorney incompetence and negligence prejudiced and precluded White's initial 28 U.S.C. 2255 to be deemed time barred. White is serving a 40 year sentence and his family raised money to retain Dana Childress-Jones to file White's Section 2255 Motion. Since a criminal defendant generally only gets one chance to file and challenge the judgment and sentence under 28 U.S.C. 2255 White trusted that his Attorney had the requisite knowledge of Federal rules, skills, and competence to ensure that his motion would be filed in accordance with the applicable rules of the United States Supreme Court and Justice System. White's Attorney admittedly failed him in this respect, one would assume that this honest mistake had no real ramifications. While

it is incontrovertible that, post conviction counsel's miscalcu-
lation of a 28 U.S.C. 2255 deadline caused grave ramifications for
White.  Like the District Court and Appellate Court refusing to hear or address the
constitutionality of White's claims and conviction by a just court.

Prior to the deception of Attorney Childress-Jones, White recalls
a conversation concerning **A.U.S.A. Timothy Morrison,** who was
Attorney Jone's mentor in college and after this conversation, is
where  the pure intent to deceive White begin.  Because White has
substantial constitutional claims that needs to be addressed and
once they are presented and heard in a just court, White's convic-
tion will be overturned.  And what better way to repay her mentor
then to tank the biggest case of his career.  In May of 2009, Peti-
tioner White filed a 28 U.S.C. 2255(c)(2) outlining the ineffective
assistance of his post conviction counsel, and the pure intent to
deceive White to believe that , the one-year limitation period
commenced on the date the Supreme Court denied petition for re-
hearing of the denial of certiorari.  White believe that, Attorney
Jones knew, the only way to deceive White and tank his initial
review of collateral proceeding would be to time bar White.  To
have any just court to hear his issues in any court, since this was
the leading priciple of **Coleman v. Thompson** and the Seventh Circuit
Bright Line Standard, until **Joseph Lombardo v. United states,** and
**Martinez v. Ryan** which has changed the landscape regarding the
effects of negligence of counsel during initial review of collateral
proceedings.  Trevino v. Thaler 133 S.Ct 1911  (2013), Martinez v.
Ryan 133 S.Ct 1309 (2012) Joseph Lombardo v. United States 15-2860.
The Supreme Court has departed from its earlier approach of Coleman
v. Thompson 501 U.S. 722 (1991), so a evidentiary hearing needs to
be held to determine the effects Attorney Jones had on White's
initial reveiw of collateral proceedings.  Since attorney Jones
acted and presented herself as an Attorney of law and officer of
the court, who willfully and intentionally deceived White into
believing that her misconduct was of competent assistance.  However,
a Petitioner is entitled to an evidentiary hearing on his claims
where he alleges facts that, if true would entitle him to relief

**Lafuente v. United States** 617 F.3d 944 (7th Cir. 2010) in order to succeed on a claim of ineffective assistance of counsel White must determine both deficient performance and prejudice...see Strictland v. Washington 466 U.S. 668, 690, 694, 104 S.Ct 2052, 80 L.Ed 2d 674 (1984) counsel performance specially fell outside the range of professionally competent assistance and there is a reasonable probability that, but for counsel's unprofessional errors the result of the proceeding would have been different.

However, in issue two, Petitioner White asserts that, had not been for the mere deviation from the constitution and principle formatted by the framers of the Bill of Rights, by the 1986 Supreme Courts erroneous decision in McMillan v. Pennsylvania, that has been deemed "wrongly decided" and in violation of the United states Sixth Amendment Jurisprudence.  Since it cannot be home to both McMillan and Apprendi.  This constitutional finding of facts committed by the District Judge violate  and has a profound affect on the liberty and integrity of the judicial proceedings.  Had this deviation from the constitution had not occurred, the outcome of the petitioner's sentencing would have been quite different. Furthermore, the penalty phase and drug amount are not charged in the indictment and proven to the jury to determine, the maximum sentence is 20 years under U.S.C. 841(b)(1)(c).  The Petitioner has shown a denial of a substantial constitutional  right.  It's almost fair to say that the District Judge deliberately abused its discretion in removing from the jury the assessment of facts. When this has always been the law.  So the substantial constitution question of law is; Did the District Court know that he was violating the Petitioner's constitutional right to have the jury determine every element of the offense, beyond a reasonable doubt?

The Judge should never be the legislator, because then the will of the Judge would be the law...see Rogers v. Tennessee 532, U.S. 451, 149 L.Ed 2d 697, 121 S.Ct 1693 (2000).  In 1986, the anti-drug abuse act of 1986 "defined every narcotic drug" as elements.  While some early American Statutes provide ranges of permissible sentences, K. Stith and J. Cabranes, fear of judging, sentencing

guidelines in the Federal Courts (1998). The ranges themselves were linked to par-
ticular facts constituting the elements of the crime e.g. Lacy v. State 15 Wis 13
(1862). While a fact was by law essential to the penalty it was an element of the
offense. These widely recognince principles, followed a well-established practice
of including in the indictment and submitting to the jury everyfact that was a
basis for imposing or increasing punishment. While an exhaustive history needn't
recounted here..see id. at 501-509 120 S.Ct 2348, 147 L.Ed 2d 435 Thomas J. con-
curring, detailing practices of American Courts from the 1840's and onward. A few
particularly salient examples illustrate the point in Hope v. Commonwealth 50 mass
1349 metc 134 (1843). The Petitioner asserts that, the failure to object to drug
amount falls on the appointed counsel's errors not the Petitioner's and a procedural
default should not be held against the Petitioner for the attorney's errors. How-
ever, the United States Supreme Court overruled McMillan because the reasoning of
that decision has been thoroughly undermined by intervening decisions and because no
significant reliance interest are at stake that "might justify adhering to their re-
sult." Like Wise, J. Alito exaggerates when he suggests that this case creates an
important "precedent about precedent" Post at 2. rarely will a claim for stare de-
cisis be as weak as here. Where a constitutional rule of criminal procedure is at
issue that the majority of the court has previously recognized is incompatible with
our broader jurisprudence. The McMillan foundation was based on the fact of an
element to be considered as a sentencing factor that allowed a Judge to consider
facts instead of the jury and this wrongly decided decision violate Petitioner's
due process under Winship.

Petitioner White's Sixth Amendment and fifth Amendment Right were both violated
when the appellate court assumed what any reasonable Jury would have done. While the jury
in White's case was never given the option to determine drug quantity of powder
cocaine. The sentencing judge gives Petitioner White 5 or 6 Kilograms of crack
cocaine. A substance that is not even known to the court since crack cocaine is a
street slang for cocaine base and cocaine base was not charged in White's indict-
ment or given to the jury to determine. So in analyzing the evidence presented
at trial to support a conclusion that the conspiracy distributed over five kilo-
grams of powder cocaine as support of the sentence imposed by the court. The Seventh
Circuit Court of Appeals assumed that the jury relied on the so-called overwhelming
evidence, based on "hearsay' because the governement never seized a single kilogram
in this case, nor anything near the 500 kilograms the District Court's finding of
facts are based on. So relying upon that assumption, the court was simply wrong.
And a review of the trial transcript and jury instruction will show that the jury

was never asked to consider or pass upon the drug quantity involved in the Peti-
tioner's case.   Therefore, the District Court was never authorized to impose a sen-
tence beyond the defaulted statutory maximum of 20 years set forth in 841(b)(1)(c)
for an unspecified quantity of cocaine powder.

However, at White's resentencing proceedings, had defense counsel raised an Apprendi
objection and requested a new factual finding on the drug quantity involved in the
Petitioner's case consistent with the jury verdict alone, the District Court would
have been limited to the defaulted statutory maximum of 20 years or 240 months set
forth in 841 (b)(c)(1) since White is a first time non-violent offender.

Under the plain error review conduct by the Seventh Circuit Court of Appeals, the
Apprendi error committed by the District Court at the original sentencing proceeding
was merely repeated on appeal because the original drug quantity findings were base
on a unconstitutional assessment of facts removed from the jury.   In United States
v. United States Coin and currency 401 U.S. 715, 724 (1971).   The use of flawless
sentencing procedure legitimate a punishment where the constitution immunizes the
defendant from the sentence imposed before siebold 1000 U.S. 371 at 375 (1880) the
law might have been thought to establish that so long as the conviction and sentence
were imposed by a court of competent jurisdiction, no habeas relief could issue.   In
siebold However, the Petitioner's attacked the judgment on the ground that they had
been convicted under a constitutional statues.   The court explain that if "this po-
sition is well taken, it affects the foundation of the whole proceedings, Id at 376,
a conviction under a unconstitutional law.

As discussed, the court has concluded that the same logic governs a challenge to a
punishment that the constitution deprives State and Federal Judges of authority to
impose Penry Supra at 330..see collateral attack on criminal judgment, 38 U.S. Chi
L. Rev. 142, 151 (1970 Broadly speaking, the original sphere for collateral aatack
on a conviction was where the tribunal lacked jurisdiction either in the usual sense
or because the statue under which the defendant had been prosecuted was unconstitu-
tional or because the sentence was one the court could not lawfully impose.   A con-
viction or sentenced imposed in violation of a substantive rule is not just errone-
ous but contrary to law and as a result, void...see Siebold 100 U.S. at 376 it fo-
llows, as a general principle, that a court has no authority to leave in place a
conviction or sentence that violates a substantive rule, regardless of whether a

conviction or sentence became final before the rule was announced.  A COA may
issue only for a claim for which Petitioner White has made a sub-
stantial showing of the denial of a constitutional right see rule
22(h)(1) rule of appellate procedure. 28 U.S.C. 2253 (c)(2).   This
means, according to Miller-El v. Cockrell 537 U.S. 32 (2003) that
"reasonable jurist could debate whether (or for that matter, agree
that) the petition should have been resolved in a different manner
or that the issue presenter were adequate to deserve encouragement
to proceed further.   Id. at 366 quoting Slack v. McDaniel, 529
U.S. 473 (2000) Dalton v. Battaglia 402 f.3d 729, 738, (7th Cir.
2005).

Therefore, the Petitioner respectfully asks this Honorable Court to
resentence him to the 20 years maximum under 21 U.S.C. 841(b)(1)(c).
the Petitioner has been locked up now 18 years 6 months, on an
illegal and unconsitutional assessment of facts.

Respectfully Submitted,

*Mark A. White*   5.22.216
Mark A. White

## Declaration

I, Mark A. White, herby declare under penalty of perjury (28 U.S.C.
1746) that the foregoing statements are true and correct to the
best of my knowledge and belief.

I respectfully Submit.


## Certificate of Service

I, Mark A. White, hereby cerify that I have mailed a copy of my
motion for a Certificate of Appealability "pursaunt to 28 U.S.C.
2253(c)(2) including exhibits with postage to carry same, First
Class, U.S. Mailto the person address appearing below this:

A.U.S.A office _____

10.i. Market street suite 2100 _____

Indianapvs, In 46204 _____


Mark a. White _____

Mark A. White


Date: 5-22-2016 _____