FILED
U.S. DISTRICT COURT
INDIANAPOLIS DIVISION

1998 JUN 30 PM 1:41

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. IP 98-38-CR-M/F |
| ) | |
| ANTHONY SPRADLEY, ) | -01 |
| a/k/a "Tony Johnson", a/k/a ) | |
| "Tony Thompson", ) | |
| a/k/a "Bill Gray", ) | |
| a/k/a "William Brown", ) | |
| a/k/a "Ant D", ) | |
| a/k/a "Ant Dog", ) | |
| WILLIE BODDIE, a/k/a "Toots", ) | -02 |
| MARK WHITE, a/k/a "Milk D", ) | -03 |
| a/k/a "Milk", a/k/a "Rat", ) | |
| a/k/a "Demarco Black", ) | |
| DENNIS JONES, ) | -04 |
| a/k/a "Denny Mo", ) | |
| a/k/a "Rick York", ) | |
| DARREN BROWN, a/k/a "Chico", ) | -05 |
| MARTINO PERKINS, ) | -06 |
| a/k/a "Tino", a/k/a "G", ) | |
| THOMAS ALEXANDER, ) | -07 |
| a/k/a "Stink", ) | |
| ANTHONY THOMPSON, a/k/a "Loc",) | -08 |
| ELLIS WALKER, a/k/a "Big El", ) | -09 |
| STEPHANIE JOHNSON, ) | -11 |
| ALFRED EDMONSON, ) | -12 |
| a/k/a "Michael Cooper", ) | |
| a/k/a "Little", ) | |
| WILLIAM J. GRAY, and ) | -13 |
| RAYMUND STORY, ) | -14 |
| ) | |
| Defendants. ) | |

S U P E R S E D I N G   I N D I C T M E N T

/3

## Count 1

The Grand Jury charges that:

From in or around 1992, through and including late 1997 or early 1998, the exact dates being unknown to the Grand Jury, in the Southern District of Indiana, Indianapolis Division, and elsewhere, ANTHONY SPRADLEY, a/k/a "Tony Johnson", a/k/a "Tony Thompson", a/k/a "Bill Gray", a/k/a "William Brown", a/k/a "Ant D", a/k/a "Ant Dog"; WILLIE BODDIE, a/k/a "Toots"; MARK WHITE, a/k/a "Milk D", a/k/a "Milk", a/k/a "Rat"; DENNIS JONES, a/k/a "Denny Mo", a/k/a "Rick York"; DARREN BROWN, a/k/a "Chico"; MARTINO PERKINS, a/k/a "TINO", a/k/a "G"; THOMAS ALEXANDER, a/k/a "Stink"; ANTHONY THOMPSON, a/k/a "Loc"; ELLIS WALKER, a/k/a "Big El"; STEPHANIE JOHNSON; ALFRED EDMONSON, a/k/a "Michael Cooper", a/k/a "Little"; and WILLIAM J. GRAY, defendants herein, did knowingly conspire together and with diverse other persons known and unknown to the Grand Jury, to possess with intent to distribute and to distribute more than five kilograms of cocaine, a Schedule II, Narcotic Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

### MANNER AND MEANS

1. During the course of the charged conspiracy, ANTHONY SPRADLEY (SPRADLEY), acted as the organizer and leader of a

2

multiple kilogram cocaine distribution organization in the Indianapolis, Indiana area.

2.    Throughout the course of the conspiracy, WILLIE BODDIE acted as SPRADLEY'S primary distributor, responsible for providing cocaine to other members of the organization for subsequent distribution.  These distributors included MARK WHITE (WHITE), MARTINO PERKINS (PERKINS), ELLIS WALKER (WALKER) and others.  On occasion, SPRADLEY personally provided cocaine to some individuals, including his cousin, THOMAS ALEXANDER (ALEXANDER), and his half brother, ANTHONY THOMPSON (THOMPSON) and others.

3.    Cocaine and United States currency were transported between Indiana and California by various methods, including use of commercial bus lines, rental vehicles and commercial airlines, by a number of individuals including DENNIS JONES (JONES).

4.    Various residences and apartments were utilized to store cocaine and the United States currency generated by its distribution.  Among the locations utilized to store cocaine was a residence belonging to WALKER, located at 4345 North Winthrop Avenue, Indianapolis, Indiana.

3

5.   During the course of the conspiracy, a number of the defendants, including SPRADLEY, WILLIE BODDIE and WHITE routinely carried firearms.

6.   A number of the co-conspirators, including SPRADLEY, WILLIE BODDIE, WHITE and others, utilized cellular telephones cloned by William GRAY (GRAY), in furtherance of the conspiracy.

7.   Also during the course of the conspiracy, United States currency was transferred from the State of Indiana to the State of California to promote the continuing nature of the drug trafficking enterprise.

8.   Additionally, various assets, such as vehicles, were purchased and/or registered in false and fictitious names and/or the names of nominees, including STEPHANIE JOHNSON and ALFRED EDMONSON (EDMONSON), to disguise and conceal the true nature, source and ownership of the funds used to purchase the assets. Vehicles and residences were also frequently shared, traded and/or "sold" by various members of the organization, throughout the course of the conspiracy.

9.   Further, members of the conspiracy sought to conceal their activities and their whereabouts to prevent discovery of the illegal activities by law enforcement officers and to evade arrest, during and after termination of the charged conspiracy.

4

## OVERT ACTS

In furtherance of said conspiracy and to effect the objects thereof, the defendants did commit, among others, the following overt acts.

1.    In late 1991 or early 1992, SPRADLEY began providing small amounts of cocaine to an individual known to the Grand Jury, hereinafter Individual #1.  The quantities of cocaine provided by SPRADLEY gradually increased and on approximately 5 to 10 separate occasions, between late 1992 and April 1993, SPRADLEY provided a total of approximately 10 kilograms of cocaine to Individual #1, all in exchange for United States currency.

2.    On or about February 9, 1993, WALKER was in possession of a small amount of cocaine, a triple beam scale and several firearms, including a 12 gauge Mossberg shotgun, a Norinko AK 47 rifle, a 9mm. Calico handgun and a 9 mm. Intratec handgun, at his residence, 4345 N. Winthrop Avenue, Indianapolis, Indiana.

3.    In mid 1993, SPRADLEY and ALFRED EDMONSON (EDMONSON) were sharing an apartment leased in nominee names at the Walden Apartments, Indianapolis, Indiana, when Robert Johnson, not a defendant herein, moved in with SPRADLEY and EDMONSON.  Robert

5

Johnson began selling small quantities of cocaine (one-half ounce to one ounce at a time) provided to him by SPRADLEY.

4.    Thereafter, the quantities of cocaine SPRADLEY provided to Robert Johnson for re-sale increased and Johnson began assisting SPRADLEY in storing cocaine and delivering cocaine to others for subsequent distribution.  On occasion, EDMONSON picked up United States currency for SPRADLEY.

5.    In mid to late 1993, SPRADLEY was storing some of his drug distribution proceeds at the residence of DARREN BROWN'S (BROWN) sister, located at 210 W. 43rd Street, Indianapolis, Indiana.  After a home invasion robbery at that residence on October 20, 1993, SPRADLEY retrieved approximately $100,000.00 in United States currency from that residence.

6.    In late 1993, SPRADLEY and Robert Johnson moved into an apartment at the Island Club Apartments in Indianapolis, Indiana, and THOMAS ALEXANDER (ALEXANDER) moved into their Walden apartment.  SPRADLEY began storing some of his drug distribution proceeds at the Island Club apartment and occasionally asked Robert Johnson to help him count United States currency.  On one occasion, they counted approximately $800,000.00 to $900,000.00.

7.    About the same time that SPRADLEY and Robert Johnson moved to the Island Club Apartments, SPRADLEY made arrangements

6

to obtain multiple kilogram shipments of cocaine from Oakland, California.

8.   SPRADLEY began receiving multiple kilogram quantities of cocaine from the Oakland, California area, via commercial bus line.  On one occasion, Robert Johnson accompanied SPRADLEY when a load of at least ten kilograms of cocaine arrived in Indianapolis, Indiana and Spradley took part of the cocaine shipment.

9.   Beginning around late 1993 and continuing for a period of several months, roughly one time per week, Robert Johnson acting at SPRADLEY'S direction, delivered two to three kilograms of cocaine to WILLIE BODDIE.  Frequently these deliveries were made at the home of WILLIE BODDIE and his cousin, STEPHANIE JOHNSON, located at 2389 N. Tibbs Avenue, Indianapolis, Indiana.

10.   During this same time period and continuing up to and including June 1997, WILLIE BODDIE regularly delivered cocaine to MARK WHITE (WHITE), MARTINO PERKINS (PERKINS), DENNIS JONES (JONES), Rick Boddie, now deceased, and others for distribution. SPRADLEY delivered cocaine to certain other individuals, such as SPRADLEY'S cousin, ALEXANDER, and SPRADLEY's half brother, ANTHONY THOMPSON, for further distribution.

11.  In the fall of 1993, Rick Boddie was providing up to one-eighth kilogram quantities of cocaine (commonly referred to as "Big 8's"), to Willie Lee Coby (Coby), not a defendant herein, for $3,000.00 to $3,500.00 each.  By March 1994, when Rick Boddie temporarily left the Indianapolis area, he had provided approximately four or five, one-eighth kilogram quantities of cocaine to Coby for re-sale.

12.  On or about February 24, 1994, WHITE, JONES and two other individuals were at the residence of WILLIE BODDIE and STEPHANIE JOHNSON, 2389 Tibbs Avenue, Indianapolis, Indiana, where a number of firearms, to wit: two 9 mm. semi-automatic handguns, a 10 mm. Colt, semi-automatic handgun, a .25 caliber semi-automatic handgun, a 7.62 SKS assault rifle and a 12 gauge shotgun were located.

13.  In late spring or early summer 1994, Robert Johnson feigned a robbery at the Island Club apartment he shared with SPRADLEY, taking SPRADLEY's safe containing approximately $180,000.00 in United States currency.  SPRADLEY and two other individuals abducted Robert Johnson and persuaded him to return the safe and its contents to SPRADLEY.  Thereafter, SPRADLEY continued to provide partial and whole kilogram quantities of cocaine to Robert Johnson, but, only through WILLIE BODDIE.  On

8

one occasion in the summer of 1997, when WILLIE BODDIE delivered
a kilogram of cocaine to Robert Johnson, WILLIE BODDIE was
accompanied by STEPHANIE JOHNSON.

14.   In late 1994 or early 1995, SPRADLEY developed another,
interim source for cocaine, who shipped cocaine from Los Angeles,
California to Indianapolis, Indiana, via United Parcel Service
(UPS).   SPRADLEY generally received three or four kilograms of
cocaine at a time, roughly once or twice a week, at addresses
designated by SPRADLEY.   BROWN, and others acting on his behalf,
received the UPS shipments for SPRADLEY.

15.   By early 1995, SPRADLEY had recruited Keith Cork, a/k/a
"K-Rock" (Cork), not a defendant herein, to act on SPRADLEY's
behalf.   Among other tasks, Cork stored money and cocaine for
SPRADLEY and delivered cocaine for subsequent distribution to
WILLIE BODDIE and occasionally others, including ANTHONY
THOMPSON.

16.   On or about January 13, 1995, Steve Eldridge
(Eldridge), not a defendant herein, was wounded by gunfire at the
Lee's Inn on Lafayette Road, Indianapolis, Indiana.   Thereafter,
SPRADLEY advised Cork that he, SPRADLEY, had directed ANTHONY
THOMPSON and another individual to shoot Eldridge; a few days
earlier Eldridge and another individual had followed SPRADLEY in

9

an attempt to rob SPRADLEY, resulting in WHITE and another
individual shooting at Eldridge and his companion.

17.  On or about January 16, 1995, ALEXANDER was in
Indianapolis, Indiana with a couple of small baggies of cocaine,
a cellular telephone and approximately $1,735.00 in United States
currency on his person.

18.  In or around March 1995, WILLIE BODDIE began providing
quantities of cocaine to James Douglas (Douglas), not a defendant
herein, for purposes of resale.  Their first transaction was
toward the end of March 1995, when WILLIE BODDIE provided
approximately one-half kilogram of cocaine to Douglas for
$12,000.00 to $13,000.00, at WALKER'S residence, 4345 N. Winthrop
Avenue, Indianapolis, Indiana; at that time, however, Jandelyn
Gates (Gates), not a defendant herein, rather than WALKER, was
residing at that location.

19.  From in or around 1995 until at least mid 1997, WILLIE
BODDIE stored multi kilogram quantities of cocaine at WALKER'S
Winthrop Avenue residence and frequently converted powder cocaine
into "crack" cocaine (cocaine base) at that location.

20.  During this same time period, WILLIE BODDIE also
brought duffel bags containing bundles of United States currency
wrapped with rubber bands to WALKER'S Winthrop Avenue residence,

10

approximately two times per week. On one such occasion, WILLIE BODDIE told STEPHANIE JOHNSON that a duffel bag contained $25,000.00.

21. For approximately six months, WILLIE BODDIE provided cocaine to Douglas every couple of weeks or so, generally in quantities up to one and occasionally two kilograms of cocaine at a time. These deliveries of cocaine were usually made at WALKER'S Winthrop Avenue residence, which was frequented by several members of the Spradley organization, including SPRADLEY, WHITE and PERKINS. On one occasion, STEPHANIE JOHNSON transported a one-kilogram package of cocaine to WALKER'S residence for WILLIE BODDIE to give to Douglas.

22. On some occasions, WILLIE BODDIE met Douglas at locations other than WALKER'S residence to deliver cocaine and/or collect money for cocaine previously delivered. On one such occasion, WILLIE BODDIE and WHITE were in possession of approximately fifteen kilograms of cocaine at another residence on Winthrop Avenue, where WILLIE BODDIE gave Douglas two or three kilograms of the cocaine.

23. Also in or around the spring of 1995, SPRADLEY loaned William Barlow (Barlow), now deceased, approximately $100,000.00

11

United States currency, which Barlow gave to Mario Jackson, not a defendant herein, to purchase cocaine.

24. Later in 1995, when only $20,000.00 of the $100,000.00 had been returned to SPRADLEY, SPRADLEY, BODDIE, WHITE and other individuals, known to the Grand Jury, traveled to Mario Jackson's residence, where a confrontation occurred with Barlow and Mario Jackson. During this confrontation, gunshots were exchanged with SPRADLEY, BODDIE and WHITE, firing weapons at the Jackson residence.

25. On or about October 10, 1995, while SPRADLEY and Cork were driving a Landcruiser purchased in the name Michael Cooper, an alias used by EDMONSON, SPRADLEY was in possession of a .40 caliber Glock semiautomatic handgun equipped with a laser sight.

26. In or around late March 1996, Rick Boddie returned to Indianapolis and moved into a residence located at 4344 North Winthrop, Indianapolis, Indiana, across the street from WALKER'S residence. Rick Boddie resumed providing cocaine to Coby, generally every day or two, in quantities of approximately one-eighth kilogram at a time. The cocaine was kept at WALKER'S residence and when Rick Boddie was not available, other members of the organization, including WILLIE BODDIE and WHITE, provided

12

the cocaine to Coby.  When WALKER returned to his residence in early 1997, he too made deliveries of cocaine to Coby.

27.  On or about May 3, 1996, SPRADLEY purchased Shooter's II, a bar located at 5522 Georgetown Road, Indianapolis, Indiana, and renamed it the Baja Bar and Grill (Baja).  The Baja was managed by William GRAY (GRAY).  Cork worked as a bouncer at the Baja, as did Cork's father, William Cox (Cox), not a defendant herein.  At WHITE's request, WHITE'S cousin, Marcus Willis (Willis), now deceased, was also hired as a bouncer.

28.  By the time the Baja opened, SPRADLEY was again obtaining multiple kilograms quantities of cocaine from Oakland, California, now being transported in rental vehicles driven by a number of individuals, including JONES.

29.  In July or August 1996, SPRADLEY asked Cox to drive a vehicle from Indianapolis, Indiana to California.  Shortly thereafter, Cox accompanied JONES on the first of several trips Cox made to Oakland, California to deliver money and/or to pick up cocaine for SPRADLEY.  SPRADLEY usually paid Cox $1,500.00 for making each trip.

30.  On or about August 12, 1996, a Ford Explorer was rented, naming Cox as a second driver.  The vehicle was returned to the rental company on or about August 26, 1996, after having

13

been driven approximately 5,333 miles. Another vehicle was rented with Cox named as a second driver, on September 19, 1996. This vehicle was returned on October 14, 1996, after having been driven approximately 5,351 miles.

31. When the vehicle loads of cocaine arrived in Indianapolis, the cocaine received by SPRADLEY was given to WILLIE BODDIE for distribution. On one such occasion, in September 1996, approximately two kilograms of cocaine were transferred from a rented minivan driven by Cox to a vehicle driven by WILLIE BODDIE, in the Baja parking lot, while SPRADLEY and Cork stood nearby.

32. On or about September 25, 1996, WHITE, PERKINS and three other individuals were at Rick Boddie's residence, 4344 N. Winthrop Avenue, where a number of firearms and other items were located. The firearms included a .44 caliber Smith and Wesson handgun, a 380 Sphinx semiautomatic handgun, a 9 mm. Glock semiautomatic handgun, a .40 caliber Taurus semiautomatic handgun and a .30 caliber SKS assault rifle.

33. In or around mid October 1996, STEPHANIE JOHNSON was living in an apartment at the Arrowhead Apartments complex, 7102 Warrior Trail, Indianapolis, Indiana, which apartment was also utilized by WILLIE BODDIE.

34.   On or about October 14, 1996, a vehicle was rented naming Cox as a second driver.  This vehicle was returned on November 12, 1996, after having been driven approximately 7,393 miles.  (Unknown to the defendants herein, Willis began providing information to federal law enforcement officers as a confidential informant about this same time, November 1996.)

35.   During the last week of November 1996, JONES and Cox traveled to Oakland, California to deliver money and/or to pick up cocaine for SPRADLEY.

36.   Another vehicle was rented with Cox named as a second driver on November 15, 1996.  It was returned on December 6, 1996, after having been driven approximately 5,907 miles.

37.   Around the 1997 New Year's holiday, SPRADLEY, WHITE, WILLIE BODDIE, JONES, Cox and Cork went to Atlanta, Georgia. SPRADLEY had purchased a home in nearby Conyers, Georgia, where BROWN and EDMONSON frequently stayed.  At SPRADLEY'S request, Cox transported a black leather bag in a Landcruiser purchased in STEPHANIE JOHNSON'S name, from Georgia to Indiana, where WILLIE BODDIE took the black leather bag.

38.   On or about March 4, 1997, WILLIE BODDIE, while accompanied by ANTHONY THOMPSON in Indianapolis, Indiana, was in possession of a 9 mm. Glock semi-automatic firearm.

15

39.  On or about March 6, 1997, WHITE gave JONES and Cox the keys to a rental vehicle, which was parked in front of WHITE'S restaurant, Soul for Real, located at 3961 Boulevard, Indianapolis, Indiana.  At SPRADLEY's residence, 3664 Sommersworth Lane, Indianapolis, Indiana, SPRADLEY gave JONES and Cox approximately $304,000.00 in United States currency.  At SPRADLEY'S request, JONES and Cox then left Indianapolis in the rental vehicle, to deliver the bag of currency to California. JONES and Cox traveled as far as Kansas when they were stopped by law enforcement officers and the currency was seized.

40.  Approximately two weeks later, Cox drove another rental vehicle to Oakland, California.

41.  On at least two occasions between June 14, 1997 and prior to June 27, 1997, Willis was confronted by SPRADLEY about being an informant for law enforcement officers.  On at least one of those occasions, WHITE was present.

42.  On or about June 22, 1997, at SPRADLEY'S request, Cox drove to Atlanta, Georgia.  Cox then met BROWN, who was staying at SPRADLEY'S residence in Conyers, Georgia.

43.  A few days prior to June 27, 1997, SPRADLEY, BODDIE, WHITE, WALKER and others, had a meeting on Winthrop Avenue where

16

they discussed Willis being a drug informant and what should be done.

44.    About this same time, SPRADLEY traveled to Conyers, Georgia, met with BROWN and Cox and had a fake stereo speaker containing multiple kilogram quantities of cocaine placed in Cox's Pathfinder vehicle.  Cox and BROWN drove the Pathfinder to Indianapolis, Indiana and SPRADLEY returned to Indianapolis independently.  Following the arrival of BROWN and Cox, on or about June 27, 1997, the cocaine-laden, fake stereo speaker was transferred to Cork's vehicle.

45.    During the afternoon of June 27, 1997, SPRADLEY, WHITE, Willis and Cork were together at 49th and Hillside where SPRADLEY and WHITE confronted Willis about being an informant. Thereafter, WHITE and Willis left.

46.    At approximately 5:00 p.m. on Friday, June 27, 1997, two individuals known to the Grand Jury, traveled to 49th and Hillside, where one of the individuals obtained an "8-Ball" (approximately 3.5 grams) of cocaine from WHITE and then left that location.

47.    Later on June 27, 1997, Cox met SPRADLEY, WHITE, Willis and others at 3460 North Dearborn, Indianapolis, Indiana.

17

48.   Late on June 27, 1997 or early on June 28, 1997, WHITE shot and killed Willis in WHITE's Yukon truck.

49.   In or about the summer of 1997, Individual #1 met with SPRADLEY and WALKER in the vicinity of 45th and Winthrop Avenue, Indianapolis, Indiana, where SPRADLEY told Individual #1 he, SPRADLEY, was moving to Atlanta, Georgia, where he had purchased a residence because things were "too hot" in Indianapolis.

50.   On June 30, 1997, SPRADLEY, JONES, GRAY and other individuals known to the Grand Jury, met at 49th and Hillside, where WHITE's Yukon truck had been hidden since shortly after Willis' murder.   To cover up the murder, SPRADLEY, JONES, GRAY and others participated in the removal, destruction and secretion of various parts of the Yukon, including the burning of the passenger seat in which Willis was sitting when murdered.

51.   GRAY was then instructed to drive Cork's Lincoln, which still contained multiple quantities of cocaine in the fake stereo speaker, to the area of 3000 North California, Indianapolis, Indiana.   Two to three days later, GRAY drove the Lincoln containing the cocaine to the area of West 25th Street where he met Cork.   SPRADLEY, WILLIE BODDIE and WHITE arrived and took the speaker containing the cocaine from the Lincoln.

18

52. Within a day or two of the events described above, GRAY and another individual known to the Grand Jury, returned to the Caroline location, retrieved the burned, Yukon passenger seat and transported it to an illegal dump where it was left.

53. Within one to two weeks following the murder of Willis, SPRADLEY and WHITE each instructed Cork, Cox and others that if they were contacted by police for questioning they should deny all knowledge. WHITE added that failure to do so would result in their receiving the same treatment Willis had received.

54. Also following the murder of Willis, SPRADLEY advised another individual known to the Grand Jury (hereinafter Individual #2) who had been receiving one and two kilograms of cocaine at a time from SPRADLEY, that SPRADLEY could no longer deal directly with Individual #2. SPRADLEY advised that he had to leave Indianapolis because there was too much heat there (understood by Individual #2 to mean the law enforcement investigation of Willis' murder). Thereafter, up to and including March 1998, Individual #2 received several more kilogram quantities of cocaine, through SPRADLEY'S source of supply.

All in violation of Title 21, United States Code, Section 846.

19

## Count 2

The Grand Jury charges that:

On or about June 27, 1997, in the Southern District of Indiana, MARK ANTHONY WHITE, a/k/a "Milk D", a/k/a "Milk"; and ANTHONY SPRADLEY, a/k/a "Tony Johnson", a/k/a "Tony Thompson", a/k/a "Bill Gray", a/k/a "William Brown", a/k/a "Ant D", a/k/a "Ant Dog"; defendants herein, with malice aforethought, did unlawfully, willfully, deliberately, maliciously, and with premeditation, kill Marcus Willis, by shooting Marcus Willis in the neck and head with a firearm, with the intent to prevent communication by Marcus Willis to a law enforcement officer of information relating to the commission or possible commission of a federal offense, to wit: conspiracy to possess with intent to distribute and to distribute cocaine; which killing is a murder as defined in Title 18, United States Code, Section 1111(a).

All in violation of Title 18, United States Code, Section 1512(a)(1)(C).

## Count 3

The Grand Jury further charges that:

On or about June 27, 1997, in the Southern District of Indiana, MARK ANTHONY WHITE, a/k/a "Milk D", a/k/a "Milk", a/k/a "Demarco Black", a/k/a "Rat"; and ANTHONY SPRADLEY, a/k/a "Tony

20

Johnson", a/k/a "Tony Thompson", a/k/a "Bill Gray", a/k/a
"William Brown", a/k/a "Ant D", a/k/a "Ant Dog"; defendants
herein, with malice aforethought, did unlawfully, willfully,
deliberately, maliciously, and with premeditation, kill Marcus
Willis, by shooting Marcus Willis in the neck and head with a
firearm, with the intent to retaliate against Marcus Willis for
providing to a law enforcement officer information relating to
the commission or possible commission of a federal offense, to
wit:  conspiracy to possess with intent to distribute and to
distribute cocaine; which killing is a murder as defined in Title
18, United States Code, Section 1111(a).

All in violation of Title 18, United States Code, Section
1513(a)(1)(B).

### Count 4

The Grand Jury further charges that:

On or about June 27, 1997, in Marion County, Indiana, within
the Southern District of Indiana, MARK ANTHONY WHITE, a/k/a "Milk
D", a/k/a "Milk", a/k/a "Demarco Black", a/k/a "Rat"; and ANTHONY
SPRADLEY, a/k/a "Tony Johnson", a/k/a "Tony Thompson", a/k/a
"Bill Gray", a/k/a "William Brown", a/k/a "Ant D", a/k/a "Ant
Dog"; defendants herein, did knowingly use a firearm,
specifically: a handgun, during and in relation to a crime of

21

violence, that is, the murder of Marcus Willis, a federal informant, as alleged in Counts 2 and 3 of this indictment.

All in violation of Title 18, United States Code, Sections 924(c) and 2.

## Count 5

The Grand Jury further charges that:

On or about June 30, 1997, in the Southern District of Indiana, DENNIS JONES, a/k/a "Denny Mo", a/k/a "Rick York", and WILLIAM J. GRAY, defendants herein, knowing that an offense against the United States had been committed, to wit: that on or about June 27, 1997, in the Southern District of Indiana, Mark 'Anthony White and Anthony Spradley, with malice aforethought, did unlawfully, willfully, deliberately, maliciously, and with premeditation, kill Marcus Willis, by shooting Marcus Willis in the neck and head with a firearm, with the intent to prevent communication by Marcus Willis to a law enforcement officer of information relating to the commission or possible commission of a federal offense, to wit: conspiracy to possess with intent to distribute and to distribute cocaine, which killing is a murder as defined in Title 18, United States Code, Section 1111(a); the said DENNIS JONES and WILLIAM GRAY, did receive, relieve, comfort and assist the offenders, Mark Anthony White and Anthony

22

Spradley, in order to hinder and prevent the offenders'

apprehension, trial and punishment,

All in violation of Title 18, United States Code, Sections

1512(a)(1)(C), 1111(a) and 3.

COUNT 6

The Grand Jury further charges that:

On or about June 30, 1997, in the Southern District of

Indiana, DENNIS JONES, a/k/a "Denny Mo", a/k/a "Rick York", and

WILLIAM GRAY, defendants herein, knowing that an offense against

the United States had been committed, to wit: that on or about

June 27, 1997, in the Southern District of Indiana, Mark Anthony

White, with malice aforethought, did unlawfully, willfully,

deliberately, maliciously, and with premeditation, kill Marcus

Willis, by shooting Marcus Willis in the neck and head with a

firearm, with the intent to retaliate against Marcus Willis for

providing to a law enforcement officer information relating to

the commission or possible commission of a federal offense, to

wit: conspiracy to possess with intent to distribute and to

distribute cocaine, which killing is a murder as defined in Title

18, United States Code, Section 1111(a); the said DENNIS JONES

and WILLIAM GRAY did receive, relieve, comfort and assist the

offenders, Mark Anthony White and Anthony Spradley, in order to

23

hinder and prevent the offenders' apprehension, trial and punishment.

All in violation of Title 18, United States Code, Sections 1513(a)(1)(B), 1111(a) and 3.

<u>Count 7</u>

The Grand Jury further charges that:

Beginning in or around mid 1993, and continuing up to the date of this indictment, the exact dates being unknown to the Grand Jury, within the Southern District of Indiana and elsewhere, ANTHONY SPRADLEY, a/k/a "Tony Johnson", a/k/a "Tony Thompson", a/k/a "Bill Gray", a/k/a "William Brown", a/k/a "Ant D", a/k/a "Ant Dog"; WILLIE BODDIE, a/k/a "Toots"; MARK WHITE, a/k/a "Milk D", a/k/a "Milk", a/k/a "Demarco Black", a/k/a "Rat"; DENNIS JONES, a/k/a "Denny Mo", a/k/a "Rick York", defendants herein, did knowingly conspire together and with diverse other persons, known and unknown to the Grand Jury, to conduct or cause to be conducted, financial transactions, knowing that property involved in the financial transactions represented the proceeds of some form of unlawful activity, which transactions in fact involved the proceeds of specified unlawful activity, to wit: distribution of cocaine, a Schedule II, Narcotic Controlled Substance, with the intent to promote the carrying on of

24

specified unlawful activity, a violation of Title 18, United States Code, Section 1956 (a)(1)(A)(i).

## BACKGROUND

At all times relevant herein, the statutes and regulations set forth below provided, in substance, as follows:

a.    18 U.S.C. § 1956(a)(1)(A)(i) prohibits a person, knowing that property involved in a financial transaction represents the proceeds of some form of unlawful activity, from conducting such financial transaction which in fact involves the proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity.

b.    Trafficking in cocaine is a specified unlawful activity within the meaning of 18 U.S.C. § 1956.

c.    The phrase "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity" means that the person knew the property involved in the transaction represented proceeds from some form, though not necessarily which form, of activity which constitutes a felony under State, Federal or foreign law.

d.    The term "transaction" includes a purchase, sale, loan, pledge, gift, transfer, delivery or other disposition.

25

e. A "financial transaction" means a transaction which in any way affects interstate or foreign commerce and which involves: the use of a financial institution; movement of funds by wire; one or more monetary instruments; or transfer of title to real property or vehicle.

f. The term "monetary instrument" includes currency of the United States or bank checks.

g. The term "conducts" includes initiating, concluding, or participating in initiating, or concluding a transaction.

MANNER AND MEANS

During the course of the conspiracy charged herein:

1. It was a part of said conspiracy that ANTHONY SPRADLEY, WILLIE BODDIE, DENNIS JONES and MARK WHITE, defendants herein, and other individuals known and unknown to the Grand Jury, utilized proceeds from a specified unlawful activity, that is, the unlawful distribution of cocaine, a Schedule II Narcotic Controlled Substance, a violation of Title 21, United States Code, Section 841(a)(1), to conduct and attempt to conduct financial transactions affecting interstate commerce, including the payment of United States currency for cocaine transported from the state of California to the state of Indiana.

26

2.     It was further a part of said conspiracy that ANTHONY SPRADLEY, defendant herein, also utilized proceeds from a specified unlawful activity, that is, the unlawful distribution of cocaine, a Schedule II Narcotic Controlled Substance, a violation of Title 21, United States Code, Section 841(a)(1), to conduct and attempt to conduct financial transactions affecting interstate commerce, including the payment of United States currency to persons recruited to transport United States currency from the state of Indiana to the state of California for the purchase of cocaine, and to transport cocaine from the state of California to the state of Indiana.

3.     It was further a part of said conspiracy that WILLIE BODDIE, defendant herein, Jandelyn Gates, not a defendant herein, and other individuals whose identity is both known and unknown to the Grand Jury, utilized proceeds from a specified unlawful activity, that is, the unlawful distribution of cocaine, a Schedule II Narcotic Controlled Substance, a violation of Title 21, United States Code, Section 841(a)(1), to conduct and attempt :to conduct financial transactions affecting interstate commerce, including rent and utility payments made with United States currency for houses used to store cocaine and money, and from

27

where cocaine was distributed, which cocaine was transported from the state of California to the state of Indiana.

4. It was further a part of said conspiracy that ANTHONY SPRADLEY, a/k/a "Tony Johnson", a/k/a "Tony Thompson", a/k/a "Bill Gray", a/k/a "William Brown", a/k/a "Ant D", a/k/a "Ant Dog"; WILLIE BODDIE, a/k/a "Toots"; MARK WHITE, a/k/a "Milk D", a/k/a "Demarco Black", a/k/a "Rat"; DENNIS JONES, a/k/a "Denny Mo", a/k/a "Rick York", defendants herein, did engage in such financial transactions with the intent to promote the carrying on of specified unlawful activity, that is, the unlawful distribution of cocaine, a violation of Title 21, United States Code, Section 841(a)(1).

## OVERT ACTS

In furtherance of said conspiracy and to effect the objects thereof, the defendants did commit, among others, the following overt acts:

1. Overt Acts 1 through 54 inclusive, as alleged in Count 1 of this superseding indictment are realleged as though fully set forth here.

All in violation of Title 18, United States Code, Section 1956 (h).

28

## Count 8

The Grand Jury further charges that:

Beginning in or around mid 1993, and continuing up to the date of this indictment, the exact dates being unknown to the Grand Jury, within the Southern District of Indiana and elsewhere, ANTHONY SPRADLEY, a/k/a "Tony Johnson", "Tony Thompson", a/k/a "Bill Gray", a/k/a "William Brown", a/k/a "Ant D", a/k/a "Ant Dog"; WILLIE BODDIE, a/k/a "Toots"; MARK WHITE, a/k/a "Milk D", a/k/a "Milk", a/k/a "Demarco Black", a/k/a "Rat"; STEPHANIE JOHNSON; ALFRED EDMONSON, a/k/a "Michael Cooper", a/k/a "Little", WILLIAM J. GRAY; and RAYMUND STORY, defendants herein, did knowingly conspire together and with diverse other persons, known and unknown to the Grand Jury, to conduct or cause to be conducted, financial transactions, knowing that property involved in the financial transactions represented the proceeds of some form of unlawful activity, which transactions in fact involved the proceeds of specified unlawful activity, to wit: distribution of cocaine, a Schedule II, Narcotic Controlled Substance, and knowing that the transactions were designed in whole or in part to conceal or disguise the nature, source, ownership or control of the proceeds of the specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

29

## BACKGROUND

At all times relevant herein, the statutes and regulations set forth below provided, in substance, as follows:

a.    18 U.S.C. § 1956(a)(1)(B)(i) prohibits a person, knowing that property involved in a financial transaction represents the proceeds of some form of unlawful activity, from conducting such financial transaction which in fact involves the proceeds of specified unlawful activity, knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the source, the ownership or the control of the proceeds of specified unlawful activity.

b.    The term financial institution includes commercial banks, telegraph companies, such as Western Union, licensed senders of money orders, businesses engaged in vehicle sales and persons involved in real estate closings and settlements referred to in this indictment, within the meaning of 31 U.S.C. § 5312(a)(2).

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the defendants did commit, among others, the following overt acts:

30

Overt Acts numbered 1 through 54, as set forth in Count 1, above, are incorporated, as if set forth in full herein.

55. For the tax years 1992 through 1995, SPRADLEY filed federal income tax returns, claiming to earn income as a gambler, in roughly the same amounts as the monies he spent on assets placed in his own name, such as a residence located at 3664 Sommersworth Lane, Indianapolis, Indiana and the Baja Bar and Grill, as set forth below.

56. On or about April 7, 1994, SPRADLEY provided an individual known to the Grand Jury with approximately $50,000.00 in United States currency. This currency was deposited to an escrow account at Key Bank, Indianapolis, Indiana and used to close on a lease with option to purchase contract, for a residence at 3664 Sommersworth Lane, Indianapolis, Indiana. SPRADLEY obtained a mortgage from the Money Store to purchase this residence on or about January 12, 1996, and later "sold" it to Robert Johnson, not a defendant herein.

57. On or about May 3, 1996, when SPRADLEY purchased Shooter's II (the Baja Bar and Grill), SPRADLEY and WILLIAM J. GRAY (GRAY) used United States currency to purchase two cashier's checks, one for $30,000.00 payable to the owners of Shooter's II

31

and one for $20,600.00 payable to the broker arranging the purchase.

58.   Throughout the course of the charged conspiracy, SPRADLEY, WILLIE BODDIE, WHITE and others also purchased assets in names other than their own, using false and fictitious names and nominees such as STEPHANIE JOHNSON and ALFRED EDMONSON.   Some of these assets were shared, traded and/or "sold" between the co-conspirators.

59.   During the course of the charged conspiracy, United States currency, cashier's checks, money orders and wire transfers were used to purchase assets and make periodic payments on assets, frequently in false and fictitious names and/or the names of nominees.

60.   During the summer of 1995, SPRADLEY had a 1992 Cadillac Eldorado and a 1992 Acura (purchased in the names of ALFRED EDMONSON and Michael Cooper, respectively, as set forth below in paragraphs 67 and 71(A)) made into convertibles at Newport Car Conversions, Inc., in Norwalk, California.   The Cadillac conversion, costing approximately $6,500.00, was negotiated in the name ALFRED EDMONSON, 3664 Sommersworth Lane, Indianapolis, Indiana, but later changed to the name "Tony Thompson", 2830 Adams, Indianapolis, Indiana.   The Acura conversion, costing

32

approximately $16,816.00, also began in the name ALFRED EDMONSON, 3664 Sommersworth Lane, Indianapolis, Indiana, then changed to "Robert Thompson", 2830 Adams, Indianapolis, Indiana.  The conversions were paid for with money orders purchased by SPRADLEY and signed by SPRADLEY, as well as GRAY and Keith Cork (Cork), not a defendant herein, in the names Keith Cork, William Gray, Tony Thompson and Tony Johnson.

61.  Additionally, SPRADLEY and others have obtained identification documents in false names, such as an Indiana Identification Card bearing SPRADLEY'S photograph, but the name "Bill Gray" and an address of 2830 Adams, Indianapolis, Indiana, to facilitate the concealment of assets.

62.  During the course of the conspiracy, a number of residences were purchased and traded or shared by the co-conspirators in names other than their own, as set forth in Overt Acts 63 through 65, below.

63.  On or about December 20, 1996, SPRADLEY provided United States currency to purchase an $8,717.00 cashier's check used to close on a residence located at 12311 Westridge Circle, Indianapolis, Indiana, for Cork, in Cork's mother's name.

64.  During December 1996 and January 1997, SPRADLEY, acting through a realtor, purchased a residence located at 1685 Brentwood Crossing S.E., Conyers, Georgia.

65.  On or about February 26, 1997, an $8,000.00 cashier's check was purchased with United States currency and used to close on the purchase of a residence located at 11634 Pompano, Indianapolis, Indiana, in the name of STEPHANIE JOHNSON for WILLIE BODDIE.  The monthly payments of $1,150.46 were made through October 1997, some by money orders and/or wire transfers in the name STEPHANIE JOHNSON.

66.  During the course of the conspiracy, a number of vehicles were purchased and traded in on other vehicles in various names.  Each transaction or series of transactions is set forth in Overt Acts 67 through 75, below.

67.  On or about April 28, 1994, a 1992 Cadillac Eldorado, VIN 1G6EL13B8NU604236 was purchased in the name ALFRED EDMONSON at Indy Auto Sales in Indianapolis, Indiana.  The purchase price of $22,000.00 was satisfied by the trade-in of a 1987 Chevrolet Corvette and $8,500.00 in United States currency.

68.  On or about June 28, 1994, a 1994 Lexus GS300, VIN JT8JS47E6R0074929, was purchased in the name ALFRED EDMONSON at Tom Wood Lexus, Indianapolis, Indiana.  The purchase price of

$42,400.00 was satisfied by the trade-in of a 1991 Acura Legend and $4,000.00 in United States currency, with the remainder financed.   Loan payments were made with United States currency by ALFRED EDMONSON and WILLIE BODDIE.   This vehicle was traded or "sold" between SPRADLEY, WILLIE BODDIE and John Jackson, not a defendant herein.

69.(A)   On or about October 26, 1994, a 1994 GMC pickup truck conversion, VIN 2GDEC19KXR1576330, was purchased in the names ANTHONY SPRADLEY and Lee Foley, not a defendant herein, at Ray Skillman GMC, Indianapolis, Indiana.   The purchase price of $31,006.00 was satisfied by a trade-in of a 1991 Chevrolet Corvette, with the remainder financed.   SPRADLEY then "sold" the pickup truck to WHITE.

(B)   In or around October 1995, the 1994 GMC pickup truck was sold by Formula One, Atlanta, Georgia to Graham Auto Sales, Inc., Atlanta, Georgia.   When good title could not be obtained, RAYMUND STORY (STORY), manager of Formula One, arranged for the pickup truck to be purchased by ALFRED EDMONSON, using the name Michael Cooper, providing $10,000.00 in United States currency.

(C)   On or about June 24, 1996, WHITE traded in the 1994 GMC pickup truck at Dan Young Chevrolet, Indianapolis, Indiana, on the purchase of a 1995 Chevrolet Caprice, VIN 1G1BL52P3SR156709,

35

in the name Lashauna White.  The purchase price of $22,995.00 was satisfied by the trade in of the 1994 pick up truck and a payment of $6,270.60.

70.(A)  On or about February 9, 1995, a 1993 Lincoln, VIN ILNLM9740PY632762, was purchased in the name Bill Gray, address 2830 Adams, Indianapolis, Indiana, at Indy Auto Sales, Indianapolis, Indiana.  The purchase price of $9,500.00 was satisfied in full with United States currency.

(B)  On or about April 4, 1995, the 1993 Lincoln was traded in on a 1993 GMC Yukon, VIN 1GKEK18KOPJ700382, purchased in the name Tony Johnson at Indy Auto Sales, Indianapolis, Indiana.  The purchase price of $18,500.00 was satisfied by the trade-in and $9,000.00 in United States currency.

(C)  Later on that same day, the 1993 Yukon was traded in on a 1992 Mercedes Benz 300SE, VIN WDBGA32E8NA044415, purchased in the name of ANTHONY SPRADLEY at J. Frank Motors, Indianapolis, Indiana.  The purchase price of $43,000.00 was satisfied by the trade-in and a cashier's check for $13,000.00 purchased by an individual known to the Grand Jury with United States currency provided by SPRADLEY, with the remainder financed.  This vehicle was subsequently utilized by WILLIE BODDIE.

36

(D)  On or about June 12, 1996, the 1992 Mercedes was traded in on a 1994 Cadillac Sedan Deville, VIN 1G6KD52B6RU290620, purchased in the name ANTHONY SPRADLEY at Lockhart Cadillac, Indianapolis, Indiana.  The purchase price of $25,995.00 was satisfied by the trade-in and $3,002.00 United States currency.

(E)  On or about September 3, 1996, the 1994 Cadillac was traded in on a 1995 Toyota Landcruiser, VIN JT3DJ81WOSO101336, purchased in the name STEPHANIE JOHNSON at Dan Young Chevrolet, Indianapolis, Indiana.  The purchase price of $40,800.00 was satisfied by the trade-in and $8,000.00 in United States currency, with the remainder financed.  This vehicle was utilized by WILLIE BODDIE and SPRADLEY.

(F)  Then, on or about May 12, 1997, the 1995 Landcruiser was traded in on a 1997 Ford Expedition, VIN 1FMFU18LXVLB78227, purchased in the name STEPHANIE JOHNSON at Jerry Alderman Ford, Indianapolis, Indiana.  The purchase price of $39,650.00 was satisfied by the trade-in and $4,500.00 United States currency, with the remainder financed.

71.(A)  On or about May 31, 1995, a 1992 Acura NSX, VIN JH4NA1151NT000600, was purchased in the name of Michael Cooper at Formula One Imports, Atlanta, Georgia.  The purchase price of $42,500.00 was satisfied by the trade in of a 1995 Chevrolet

37

:Camaro and $7,000.00 in United States currency with the remainder
financed.

    (B)  On or about March 20, 1996, the 1992 Acura was traded
in on a 1992 Mercedes Benz 300SL, VIN WDBFA61E1NF047576,
purchased in the name "William Brown", Atlanta, Georgia at
Formula One Imports, Atlanta, Georgia.  The purchase price of
$45,000.00 was $11,000.00 more than the trade-in allowance.  In
addition, approximately $17,219.62 was still owed on the 1992
Acura.  On or about March 28, 1996, STORY wire transferred
approximately $17,551.69 in United States currency from Atlanta,
Georgia to pay off the Acura loan.  On or about April 4, 1996,
WILLIE BODDIE provided United States currency to Keith Cork and
Rick Boddie, not a defendant herein, to make the following wire
transfers from Indianapolis, Indiana to Atlanta, Georgia:  WILLIE
BODDIE wired $4,000.00 to "Dennie Jones"; Cork wired $3,000.00 to
"Bill Gray"; and Rick Boddie wired $4,000.00 to "James Patton".

    (C)  On or about July 12, 1996, SPRADLEY, accompanied by
Keith Cork and another individual, picked up a 1995 Dodge Viper,
VIN 1B3BR65E9SV201229, at St. Charles Classic Motors Ltd., St.
Charles, Illinois, signing the invoice in the name "Tony
Johnson".  The 1995 Viper was paid for by a wire transfer of
$47,000.00 from Formula One Imports, Atlanta, Georgia to St.

Charles Classic Motors, Ltd.  The 1992 Mercedes 300SL was traded in to Formula One Imports in partial payment for the Viper.

(D)  On or about August 12, 1997, the 1995 Viper and a 1995 Mercedes 500SC, VIN WDBGA70EXSA241866 (referenced in Overt Act 72.(D), below) were traded in on a 1997 Jaguar XK8, purchased in the name Charles Bates, at Chris Auto Sales, Inc., Doraville, Georgia.  The purchase price of $70,000.00 was satisfied by the two vehicles traded in, leaving a balance of $2,720.00.  This transaction was handled by STORY.

72.(A)  On or about June 20, 1995, a 1993 Jeep Cherokee, VIN 1J4GZ78S6PC552379, was purchased in the name "Bill Gray" from OV Wheels Unlimited, Spencer, Indiana.  The purchase price of $17,535.00 was satisfied with United States currency.

(B)  On or about June 26, 1995, the 1993 Jeep was traded in on a 1995 Chevrolet Tahoe, VIN 1GNEK13K9SJ406477, purchased in the names of Anthony Vinson and Michael Cooper at Dan Young Chevrolet, Indianapolis, Indiana.  The purchase price of $32,110.00 was satisfied by the trade in of the Jeep and $7,000.00 in United States currency, with the remainder financed.

(C)  In or around September 1995, a 1995 Toyota Landcruiser, VIN JT3DJ81W2S0094521, was purchased in the name of Michael Cooper at Neill-Sandler Toyota, Murfreesboro, Tennessee.  The

39

purchase price of $45,900.00 was satisfied by a check payable to Michael Cooper in the amount of $11,124.00 resulting from the sale of the 1995 Tahoe, $6,376.00 in United States currency and a $2,500.00 cashier's check, with the remainder financed. This Landcruiser was titled in the name ALFRED EDMONSON.

(D)  On or about July 20, 1996, the 1995 Toyota Landcruiser and a 1995 BMW 740IA, VIN WBAGF6323SDH02208 (purchased from Formula One in early 1996 in the name ALFRED EDMONSON with approximately $44,000.00 United States currency paid to STORY) were traded in on a 1995 Mercedes Benz 500SC, VIN WDBGA70EXSA241866 (referenced in Overt Act 71.(D), above).  This 1995 Mercedes 500SC was purchased in the name ALFRED EDMONSON at RBM, Atlanta, Georgia.  The purchase price of $83,000.00 was satisfied by the trade in of the two vehicles and $8,678.00 in United States currency.  This Mercedes 500SC was then titled in the name William Brown, address 4344 Winthrop Avenue, Indianapolis, Indiana (a home address of Rick Boddie).

73.(A)  On or about June 22, 1995, a 1995 Chevrolet Tahoe, VIN 1GNEK13KOSJ399192, was purchased in the name of Mikita Sander(s) at Dan Young Chevrolet, Indianapolis, Indiana.  The purchase price of $33,258.00 was satisfied by the trade in of a 1995 Suzuki 1100 motorcycle owned in the name of STEPHANIE

40

JOHNSON, 4345 N. Winthrop Avenue, Indianapolis, Indiana,
$6,000.00 in United States currency and a $3,000.00 cashier's
check with the remainder financed.

73.(B)  On or about September 13, 1995, a 1995 Chevrolet
Suburban, VIN 1GNEC16K1SJ437134, was purchased in the name Mikita
Sanders at Dan Young Chevrolet, Indianapolis, Indiana.  The
purchase price of $33,163.00 was satisfied by the trade-in of the
1995 Tahoe and $5,185.00 in United States currency with the
remainder financed.  This vehicle was utilized by WILLIE BODDIE
and Ellis Walker, not a defendant herein.

74.  On or about January 30, 1996, a 1995 Chevrolet Impala,
VIN 1G1BL52POSR124638, was purchased in the name Natasha L.
Butler, at Formula One Imports.  The sales price of $21,900.00
was satisfied by $7,000.00 in United States currency, with the
remainder financed.  WILLIE BODDIE was driving this vehicle in
Indianapolis, Indiana on or about February 21, 1996.

75.  On or about November 29, 1996, a 1995 Chevrolet Yukon,
VIN 1GKEK18K1SJ703913, was purchased in the name Stacy Crowe at
Mr."T" AAA Auto Sales, Indianapolis, Indiana and titled in the
name Maggie Mickens.  The sales price of $24,000.00 was satisfied
by $8,000.00 in United States currency with remainder financed,

41

with the payments being made with United States currency.   This
vehicle was utilized by WHITE.

All in violation of Title 18, United States Code, Section
1956(h).

COUNTS 9-22

The Grand Jury further charges that:

On or about the dates set forth below, in the Southern
District of Indiana, Indianapolis Division, and elsewhere, the
below-named individuals, defendants herein, did knowingly conduct
financial transactions affecting interstate commerce, as set
forth below and as contained in the specified Overt Acts of Count
8, which are incorporated as if set forth in full herein, knowing
that the property involved in the financial transactions
represented the proceeds of some form of unlawful activity, which
transactions in fact involved the proceeds of specified unlawful
activity, to wit:  the unlawful distribution of cocaine, a
Schedule II, Narcotic Controlled Substance, and knowing that the
transactions were designed in whole or in part to conceal or
disguise the nature, source, ownership, or control of said
proceeds, all in violation of Title 18, United States Code,
Section 1956(a)(1)(B)(i):

42

| Count | Date | Defendant(s) | Transaction |
|---|---|---|---|
| 9 | 02/26/97 | WILLIE BODDIE STEPHANIE JOHNSON | Purchase of residence at 11634 Pompano, Indianapolis, Indiana Overt Act 65 |
| 10 | 04/28/94 | ANTHONY SPRADLEY ALFRED EDMONSON | Purchase of 1992 Cadillac Eldorado at Indy Auto Sales, Indianapolis, Indiana Overt Act 67 |
| 11 | 06/28/94 | ANTHONY SPRADLEY ALFRED EDMONSON | Purchase of 1994 Lexus at Tom Wood Lexus, Indianapolis, Indiana Overt Act 68 |
| 12 | 11/06/96 | WILLIE BODDIE | Loan payment for 1994 Lexus to Fidelity Acceptance Corporation, Indianapolis, Indiana Overt Act 68 |
| 13 | 06/24/96 | MARK WHITE | Purchase of 1995 Caprice at Dan Young Chevrolet, Indianapolis, Indiana Overt Act 69(C) |
| 14 | 02/09/95 | ANTHONY SPRADLEY | Purchase of 1993 Lincoln at Indy Auto Sales, Indianapolis, Indiana Overt Act 70(A) |
| 15 | 04/04/95 | ANTHONY SPRADLEY | Purchase of 1993 Yukon at Indy Auto Sales, Indianapolis, Indiana Overt Act 70(B) |
| 16 | 09/03/96 | ANTHONY SPRADLEY WILLIE BODDIE STEPHANIE JOHNSON | Purchase of 1995 Landcruiser at Dan Young Chevrolet, Indianapolis, Indiana Overt Act 70(E) |

43

| 17 | 05/12/97 | ANTHONY SPRADLEY STEPHANIE JOHNSON | Purchase of 1997 Expedition at Jerry Alderman, Indianapolis, Indiana Overt Act 70(F) |
| 18 | 04/04/96 | WILLIE BODDIE | Wire transfer of $4,000.00 to Dennis Jones from Indianapolis, Indiana Overt Act 71(B) |
| 19 | 06/20/95 | ANTHONY SPRADLEY | Purchase of Jeep Cherokee at OV Wheels Unlimited in Spencer, Indiana Overt Act 72(A) |
| 20 | 06/26/95 | ANTHONY SPRADLEY ALFRED EDMONSON | Purchase of Tahoe at Dan Young Chevrolet, Indianapolis, Indiana Overt Act 72(B) |
| 21 | 09/13/95 | WILLIE BODDIE | Purchase of 1995 Suburban at Dan Young Chevrolet, Indianapolis, Indiana Overt Act 73(B) |
| 22 | 11/29/96 | MARK WHITE | Purchase of Yukon at Mr. "T" AAA Auto Sales, Indianapolis, Indiana Overt Act 75 |

## COUNTS 23-25

The Grand Jury further charges that:

On or about the dates set forth below, in the Southern District of Indiana, Indianapolis Division, and elsewhere, the below-named individuals, defendants herein, did knowingly engage and attempt to engage in monetary transactions affecting interstate commerce, in criminally derived property of a value

44

greater than $10,000.00, as set forth below, and as contained in the specified Overt Acts of Count 8, which are incorporated as if set forth in full herein, which property was United States currency derived from a specified unlawful activity, to wit: the unlawful distribution of cocaine, a Schedule II, Narcotic Controlled Substance, a violation of Title 21, United States Code, Section 841(a)(1),

All in violation of Title 18, United States Code, Sections :1957 and 2.

<u>BACKGROUND</u>

At all times relevant herein, the statutes and regulations set forth below provided, in substance, as follows:

a.    The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution.

b.    The term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense.

**45**

| Count | Date | Defendant(s) | Transaction |
|-------|------|--------------|-------------|
| 23 | 04/07/94 | ANTHONY SPRADLEY | Deposit of $50,000.00 to escrow account of another for purchase of 3664 Sommersworth Lane, Indianapolis, Indiana Overt Act 56 |
| 24 | 05/03/96 | ANTHONY SPRADLEY WILLIAM J. GRAY | Purchase of two cashier's checks in the total amount of $50,600.00 for the purchase of Shooter's II, Indianapolis, Indiana Overt Act 57 |
| 25 | 03/31/95 | ANTHONY SPRADLEY | Deposit of $13,000.00 to escrow account of another for purchase of 1992 Mercedes at J. Frank Motors, Indianapolis, Indiana Overt Act 70(C) |

A TRUE BILL:

_____
JUDITH A. STEWART
United States Attorney


_____
Melanie C. Conour
Assistant United States Attorney


_____
John E. Dowd
Assistant United States Attorney

46